J-S38043-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| WILLIAM JUAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| REEM HASSAN | : | |
| | : | |
| Appellant | : | No. 466 EDA 2025 |

Appeal from the Order Entered January 17, 2025
In the Court of Common Pleas of Philadelphia County
Domestic Relations at No. 0C2205533

BEFORE: McLAUGHLIN, J., KING, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED NOVEMBER 18, 2025**

Reem Hassan (Mother) appeals from the trial court's rulings which denied Mother's request to relocate with A.J. (Child); modified the parties' shared custody of Child; and found Mother in contempt of a prior custody order to which Mother had agreed. We affirm.

Child was born in July 2018 to Mother and William Juan (Father). The trial court summarized the following facts:

> The parties to this matter were never married, and in a romantic relationship for approximately one year. N.T., 12/2/24, at 111. After the birth of [Child,] the parties lived together in Massachusetts for approximately five weeks. *Id.* at 19. [C]hild is multi-cultural, Father being of Taiwanese descent and Mother being of Egyptian descent. Father is a medical doctor specializing in radiology. *Id.* at 91-92. Mother is currently unemployed, but has previously worked as a scientist specializing in gene therapy. N.T., 1/9/25, at 32.

Trial Court Opinion (TCO), 3/20/25, at 1-2 (unnumbered).

On June 1, 2021, Mother gave Father 30 minutes notice that she was taking Child and leaving Massachusetts. N.T., 12/2/24, at 17. Mother refused to tell Father where she was going.[1] *Id.* at 18. According to Father, he did not immediately initiate legal proceedings because he "didn't know that was an option," and believed he "couldn't do anything about" Mother moving. *Id.* Father "was swamped with residency training" at the time and "just didn't know." *Id.* Prior to Mother leaving Massachusetts, Father had seen Child "every day." *Id.* at 19.

In the months after Mother left Massachusetts, Father did not know where Mother and Child were. *Id.* at 22. Father eventually consulted an attorney and learned that Mother and Child were living in Philadelphia with Mother's husband and Mother's older Child.[2] TCO at 2 (citing N.T., 1/9/25, at 40-41).

On July 22, 2022, Father initiated the underlying action by filing a complaint for custody. Since then, the parties have been involved in contentious and continuous litigation due to Mother's "concerted effort to exclude Father from [C]hild's life." *Id.* at 16 (footnote omitted). The trial court recounted the following procedural history:

_____

[1] Mother testified that she married her current husband the following month. N.T., 1/9/25, at 8.

[2] The older child is not the child of Father or Mother's husband. *See* TCO at 2 n.1.

> On January 12, 2023, an administrative order was entered appointing th[e trial] court [judge] as the consolidated case management judge on all future custody proceedings and scheduling a semi-protracted hearing for May 23, 2023. On May 23, 2023, the parties reached a comprehensive agreement which resolved all outstanding claims.
>
> On October 10, 2023, Father filed a petition for contempt of custody. Mother filed an answer and counterclaim for contempt on April 1, 2024.

*Id.* at 3.

In April 2024, Father informed Mother that he planned to move from Massachusetts to Philadelphia "because [Child] is [t]here." N.T., 12/2/24, at 15. Approximately ten days later, Mother served Father with notice of her proposed relocation with Child to North Carolina. *Id.* at 16. On May 10, 2024, Father filed an objection to Mother's proposed relocation and a petition to modify custody. TCO at 3-4. Father moved to Philadelphia in July 2024. N.T., 12/2/24, at 15. The trial court observed:

> Father lives approximately one mile away [from Mother and Child]. [*Id.*] at 14. Father lives in a two bedroom apartment. *Id.* at 94. His Father (Paternal Grandfather) plans to move in with him from Tawain[,] at which point he intends to rent a three bedroom apartment in the same complex. *Id.* [C]hild attends first grade at [a] school [which is] equidistant from both parents' homes. *Id.* at 180.

TCO at 2.

> The trial court further explained:
>
> A protracted hearing was scheduled for December 2, 2024. The proceedings commenced on December 2, 2024, but were not able to conclude in a single day. The matter was continued for further testimony on January 9, 2025. On January 9, 2025, after hearing from the witnesses and reviewing all evidence submitted[, the trial] court found that Mother had not met her burden in seeking

- 3 -

to relocate. The Petition for Relocation was denied on that date via final order. Th[e] court gave both counsel an opportunity to confer with their clients to propose alternate schedules for physical custody pursuant to Father's modification request; one if Mother were to still decide to relocate without [C]hild; and, one if Mother decided to remain in Philadelphia.

[Within days,] Mother [began] refusing to return [C]hild to Father for his scheduled periods of custody due to an alleged open investigation from the Philadelphia Department of Human Services. A further hearing was scheduled for January 15, 2025. On January 15, 2025, th[e] court found that the allegations were not credible and that the interim order would remain in effect. A comprehensive modification order was entered on January 17, 2025.

*Id.* at 4.

On January 17, 2025, the trial court entered an order which, *inter alia*, awarded the parties shared legal and physical custody of Child, with Mother having custody on Mondays and Tuesdays; Father having custody on Wednesdays and Thursdays; and the parties alternating custody every other weekend. *See* Order, 1/17/25, at 3. The court also found Mother "in contempt of court for willful violation of the court order dated May 23, 2023," and ordered her to pay attorneys' fees of $2,500 to Father's attorney within 30 days. *Id.* at 5.

Mother filed a timely notice of appeal and concise statement of errors pursuant to Pa.R.A.P. 1925(a)(2)(i). On appeal, Mother states her eight errors as follows:

1. Whether the [t]rial [c]ourt erred as a matter of law and abused its discretion where it determined that by clear and convincing evidence, [Mother], was in civil contempt by violating a court order that was definite, clear and specific[?]

2. Whether the [t]rial [c]ourt erred as a matter of law and abused its discretion where it determined that by clear and convincing evidence, [Mother] was in civil contempt by violating a court order and that there was notice of that order[?]

3. Whether the [t]rial [c]ourt erred as a matter of law and abused its discretion where it determined that by clear and convincing evidence, [Mother] was in civil contempt by violating a court order and that the act constituting the alleged violation was volitional[?]

4. Whether the [t]rial [c]ourt erred as a matter of law and abused its discretion where it determined that by clear and convincing evidence, [Mother] was in civil contempt by violating a court order and that she acted with wrongful intent[?]

5. Whether the [t]rial [c]ourt erred as a matter of law when it failed to re-interview the Child after new allegations of abuse[?]

6. Whether the [t]rial [c]ourt erred as a matter of law when it failed to appoint a [guardian ad litem][ or Child-directed counsel before making its decision[?]

7. Whether the [t]rial [c]ourt erred as a matter of law upon entering a custody order while [the Department of Human Services] was still investigating allegations of abuse, pursuant to the [Child Protective Services Law?]

8. Whether the Trial Court erred as a matter of law when it denied [Mother's] motion to relocate when [Mother] provided evidence of job in another state[?]

Mother's Amended Brief at 5-6.[3]

_____

[3] We refer to Mother's third brief, "Amended Brief," filed on September 19, 2025. This Court struck Mother's first brief after Father filed an application to dismiss based on Mother citing non-existent legal authority, and Mother conceded that the first brief contained false content which "arose from reliance on what counsel now knows is a flawed legal research engine." Answer to Motion to Dismiss, 7/25/25, at 1; *see also* Order, 8/1/25 (denying Father's application to dismiss, striking Mother's brief, and directing Mother to file a second brief and reproduced record). Mother filed a second brief on September 2, 2025. However, she subsequently advised this Court that the second brief "inadvertently included" erroneous content. *See* Application to
*(Footnote Continued Next Page)*

Our standard of review in custody cases is well-settled:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

**Wilson v. Smyers**, 284 A.3d 509, 515 (Pa. Super. 2022) (citation omitted).

In custody matters, the "paramount concern is the best interests of the [child] involved." **A.L.B. v. M.D.L.**, 239 A.3d 142, 148 (Pa. Super. 2020) (citation omitted). When ordering any form of custody, a court must determine the best interest of the child by considering all relevant factors, giving substantial weighted consideration to specific factors that affect the safety of the child. **See** 23 Pa.C.S. § 5328(a). "This Court defers to the credibility determinations of the trial court with regard to the witnesses who appeared before it, as that court has had the opportunity to observe their demeanor." **Harcar v. Harcar**, 982 A.2d 1230, 1236 (Pa. Super. 2009) (citations omitted). We have stated:

---

Amend, 9/12/25, at 1. This Court granted Mother's request to file an amended brief. **See** Order, 9/18/25. As indicated above, Mother filed the Amended Brief on September 19, 2025.

- 6 -

[T]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (citation omitted).

Similarly, when considering an appeal from an order holding a party in contempt for failure to comply with a court order, our scope of review is narrow: we will reverse only upon a showing that the court abused its discretion. *Harcar*, 982 A.2d at 1234. The court abuses its discretion if it misapplies the law or exercises its discretion in a manner lacking reason. *Id.* To be in contempt, a party must have violated a court order, and the complaining party must satisfy that burden by a preponderance of the evidence. *Id.* Attorneys' fees may be assessed as a sanction for the contemnor's refusal to comply with a court order, "causing the innocent party to incur fees in an effort to obtain what was rightfully his." *Id.* We have explained:

Each court is the exclusive judge of contempts against its process. The contempt power is essential to the preservation of the court's authority and prevents the administration of justice from falling into disrepute. When reviewing an appeal from a contempt order, the [appellate] court must place great reliance upon the discretion of the trial judge.

*Id.* at 1235 (citations omitted). *See also Brocker v. Brocker*, 241 A.2d 336, 339 (Pa. 1968) (stating that where the purpose of a contempt sanction is to compel compliance, the court must "consider the character and

magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired"); *Hopkins v. Byes*, 954 A.2d 654, 659 (Pa. Super. 2008) (finding trial judge "wisely reasoned" that imposition of attorneys' fees as a sanction for contempt in a custody case encourages parties to work in the best interests of the child).

Notably, the trial court in this case cited examples from the record in concluding that, "along with the totality of the circumstances, especially the behavior and demeanor of the parties that th[e] court witnessed over multiple days of trial, there is more than adequate support in the record that Mother's conduct was volitional and that she acted with wrongful intent." TCO at 17.

Our review reveals no error or abuse of discretion by the trial court, as the record contains an excess of support for the court's rulings. The court properly considered the factors set forth in 23 Pa.C.S. § 5328 (custody) and 23 Pa.C.S. § 5337 (relocation), as well as applicable legal authority pertaining to contempt of custody orders. The court thoroughly analyzed and addressed Mother's issues in its opinion. Accordingly, we adopt the trial court's March 20, 2025 opinion in disposing of Mother's first seven issues. With regard to Mother's eighth issue concerning relocation, we do not find the issue waived. However, we agree that the court's denial of Mother's relocation request "is supported by substantial and credible evidence as detailed in the analysis of the relocation factors placed on the record." *See* TCO at 23 n.7 (citing N.T, 1/9/25, at 216-25).

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>11/18/2025</u>

# IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY

Filed

MAR 2 0 2025

Clerk of Family Court 1

| | | |
|---|---|---|
| **WILLIAM C. JUAN** | : | **FAMILY COURT DIVISION** |
| *Appellee* | : | |
| v. | : | **Trial Court No. 0C2205533** |
| | : | |
| **REEM E. HASSAN** | : | **No. 466 EDA 2025** |
| *Appellant* | : | |
| | : | **IN CUSTODY** |

## TRIAL COURT OPINION PURSUANT TO 1925(b)

Appellant, Reem E. Hassan, ("Mother"), appeals from the Orders of January 9, 2025, in which this court granted Appellee, William C. Juan's ("Father") Objection to Relocation; and January 17, 2025, in which this court awarded her shared physical custody and shared legal custody with Father. After this court's review of the record, exhibits, and testimony along with the weight of the evidence attributed to the custody factors and relocation factors, the conclusions reached are supported by the record. Appellant's allegations of error are without merit and the Orders of January 9, 2025, and January 17, 2025, must be affirmed.

## FACTS

The parties to this matter were never married, and in a romantic relationship for approximately one year. Notes of Testimony 12/2/24 at 111.

Exhibit "B"

After the birth of their son the parties lived together in Massachusetts for approximately five weeks. Id. At 19. The child is multi-cultural, Father being of Taiwanese descent and Mother being of Egyptian descent. Father is a medical doctor specializing in radiology. Id. at 91-92. Mother is currently unemployed, but has previously worked as a scientist specializing in gene therapy. N.T. 1/9/25 at 32.

Mother lives with her husband, oldest child[1], the subject child, and two younger children whom she shares with her husband. N.T. 12/2/24 at 146. They live in a three bedroom home in the Naval Square section of South Philadelphia owned by Mother's husband. N.T. 1/9/25 at 40-41. Father lives approximately one mile away in the South Broad section of South Philadelphia. 12/2/24 at 14. Father lives in a two bedroom apartment. Id. at 94. His Father (Paternal Grandfather) plans to move in with him from Tawain at which point he intends to rent a three bedroom apartment in the same complex. Id. The child attends first grade at the Marion Anderson school in South Philadelphia, approximately equidistant from both parents' homes. Id. At 180. The child currently has difficulties in math and reading and had previously received therapy related to speech delays. Id. at 73-74.

## PROCEDURAL HISTORY

---

[1] The oldest child is not the child of Appellee/Father or Appellant/Mother's husband.

On July 22, 2022, Father filed a Complaint for partial physical and shared legal custody. Father then filed a motion for expedited relief on August 15, 2022, which was denied by the Honorable Ourania Papademetriou on October 14, 2022. On November 9, 2022, a custody conference was held before Hearing Officer Daniel Alvarez, Esquire. Mother filed an answer and counterclaim in custody on November 15, 2022, requesting sole physical and legal custody. On November 16, 2022, the proposed interim order submitted by Hearing Officer Alvarez was approved by Administrative Judge Margaret Murphy. The order *inter alia* granted the parties shared legal custody with Mother having primary physical custody subject to Fathers' periods of partial physical custody.

On December 22, 2022, Father filed a motion for semi-protracted hearing, which was granted on January 3, 2023. On January 12, 2023, an administrative order was entered appointing this court as the consolidated case management judge on all future custody proceedings and scheduling a semi-protracted hearing for May 23, 2023. On May 23, 2023, the parties reached a comprehensive agreement which resolved all outstanding claims.

On October 10, 2023, Father filed a petition for contempt of custody. Mother filed an answer and counterclaim for contempt on April 1, 2024. On May 10, 2024, Father filed an objection to relocation and a petition to modify

custody. A protracted hearing was scheduled for December 2, 2024. The proceedings commenced on December 2, 2024, but were not able to conclude in a single day. The matter was continued for further testimony on January 9, 2025. On January 9, 2025, after hearing from the witnesses and reviewing all evidence submitted this court found that Mother had not met her burden in seeking to relocate. The Petition for Relocation was denied on that date via final order. This court gave both counsel an opportunity to confer with their clients to propose alternate schedules for physical custody pursuant to Father's modification request; one if Mother were to still decide to relocate without the child; and, one if Mother decided to remain in Philadelphia.

Prior to receiving the proposed schedules from the parties as directed this court received correspondence from counsel for Father that Mother was refusing to return the child to Father for his scheduled periods of custody due to an alleged open investigation from the Philadelphia Department of Human Services. A further hearing was scheduled for January 15, 2025. On January 15, 2025, this court found that the allegations were not credible and that the interim order would remain in effect. A comprehensive modification order was entered on January 17, 2025. Notice of appeal was filed by Mother on February 18, 2025.

## STATEMENT OF ERRORS

1.      The trail court erred as a matter of law and abused its discretion where it determined that by clear and convincing evidence, Reem Hassan, was in civil contempt by violating a court order that was definite, clear and specific.

2.      The trial court erred as a matter of law and abused its discretion where it determined that by clear and convincing evidence, Reem Hassan was in civil contempt by violating a court order and that there was notice of that order.

3.      The trial court erred as a matter of law and abused its discretion where it determined by clear and convincing evidence, Reem Hassan was in civil contempt by violating a court order and that the act constituting the alleged violation was volitional.

4.      The trial court erred as a matter of law and abused its discretion where it determined that by clear and convincing evidence, Reem Hassan was in civil contempt by violating a court order and that she acted with wrongful intent.

5.      The trial court erred as a matter of law when it failed to re-interview the child after new allegations of abuse.

6.    The trial court erred as a matter of law when it failed to appoint a GAL or child-directed counsel before making its decision.

7.    The trial court erred as a matter of law upon entering a custody order while DHS was still investigating allegations of abuse, pursuant to CPSL.

8.    The trial court erred as a matter of law when it denied appellant's motion to relocate when appellant provided evidence of a job in another state.

9.    Appellant respectfully requests to reserve the right to supplement this Statement of Errors Complained of on Appeal, pending receipt of the Notes of Testimony in this matter.[2]

## LEGAL ANALYSIS

In any custody determination, the paramount consideration is the best interest of the child. Myers v. DiDomenico, 657 A.2d 956 (Pa. Super. 1995). Moreover, as part of the best interest analysis, the court must consider the relevant factors set forth under 23 Pa.C.S. § 5328. Those factors are as follows:

(1) Which party is more likely to ensure the safety of the child.

---

[2] No supplemental allegations of error have been received by this court.

(2) The present and past abuse committed by a party or member of the party's household, which may include past or current protection from abuse or sexual violence protection orders where there has been a finding of abuse.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(2.2) Violent or assaultive behavior committed by a party.

(2.3) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party if contact is consistent with the safety needs of the child.

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life, except if changes are necessary to protect the safety of the child or a party.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's developmental stage, maturity and judgment.

(8) The attempts of a party to turn the child against the other party, except in cases of abuse where reasonable safety measures are necessary to protect the safety of the child. A party's reasonable concerns for the safety of the child and the party's reasonable efforts to protect the child shall not be considered

attempts to turn the child against the other party. A child's deficient or negative relationship with a party shall not be presumed to be caused by the other party.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child or self from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

A trial court must place its reasoning regarding these factors on the record or in a written opinion. S.W.D. v. S.A.R., 96 A.3d 396 (Pa. Super.

2014). It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case. A.D. v. M.A.B., 989 A.2d 32, 35–36 (Pa. Super. 2010). Here, this trial court considered all of the statutory factors, setting forth a comprehensive totality of the circumstances analysis of the factors and a corresponding order based upon that analysis.

Custody determinations are within the discretion of the trial court that presided over the hearing and had the opportunity to view the witnesses firsthand, including the trial court's assessment of witnesses' credibility and the weight given to their testimony. Johns v. Cioci, 865 A.2d 931 (Pa. Super. 2004). The appellate court may not interfere with the trial court's factual conclusions absent a finding that they are unreasonable and not supported by the record, and thus represent a "gross abuse of discretion." Graham v. Graham, 794 A.2d 912, 914-915 (Pa. Super. 2002)(quoting Vineski v. Vineski, 675 A.2d 722, 723 (Pa. Super. 1996).

### Allegations of Error 1-4: Contempt of Custody

Appellant's first four allegations of error center upon this court's finding that she violated the controlling order and ordering that she pay $2,500 in attorney's fees to the opposing party's counsel. In reviewing a trial court's finding on a contempt petition, [the Superior Court is] limited to determining

whether the trial court committed a clear abuse of discretion. Mueller v. Anderson, 609 A.2d 842, 843 (Pa. Super. 1992). An appellate court defers to the credibility determinations of the trial court with regard to the witnesses who appeared before it, as that court has had the opportunity to observe their demeanor. Garr v. Peters, 773 A.2d 183, (Pa. Super. 2001).

In seeking to hold party in civil contempt, the complaining party has the burden of proving by a preponderance of evidence that a party violated a court order. Garr,183. In order to sustain a finding of civil contempt, the complainant must prove certain distinct elements by a preponderance of the evidence: (1) that the contemnor had notice of the specific order or decree which [he] is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent. Harcar v. Harcar, 982 A.2d 1230, 1235 (Pa. Super. 2009).

This court found that Appellant violated the custody order of May 23, 2023. That order is as follows:

THE FOLLOWING STIPULATION IS HEREBY MADE AN ORDER OF THIS COURT, BY AGREEMENT OF THE PARTIES, PLAINTIFF, WILLIAM C. JUAN (FATHER) AND DEFENDANT, REEM E. HASSAN (MOTHER), WHO INTENDING TO BE LEGALLY BOUND, DO HEREBY STIPULATE AND AGREE AS FOLLOWS:

1. LEGAL CUSTODY: THE PARTIES SHALL CONTINUE TO SHARE LEGAL CUSTODY OF THE MINOR CHILD, A█ J███ (DOB: ██████) AND SHALL MAKE ALL MAJOR DECISIONS REGARDING THE CHILD'S HEALTH, EDUCATION, SOCIAL AND RELIGIOUS UPBRINGING

TOGETHER. THE PARTIES SHALL NEGOTIATE IN GOOD FAITH TO ATTEMPT TO AMICABLY RESOLVE ANY LEGAL CUSTODY ISSUES BEFORE RESORTING TO LITIGATION AND SHALL HAVE AN AFFIRMATIVE OBLIGATION TO ENGAGE IN MEANINGFUL DISCUSSIONS REGARDING LEGAL CUSTODY DECISIONS, TAKING INTO CONSIDERATION THE OTHER'S OPINION AND THAT OF ANY THIRD-PARTY PROVIDER, PARTICULARLY WITH RESPECT TO MEDICAL AND THERAPEUTIC DECISIONS AFFECTING A███. NEITHER PARTY SHALL UNREASONABLY WITHHOLD HIS/HER CONSENT WHEN MAKING ANY SUCH DECISION, AND NEITHER PARTY SHALL ACTIVELY DELAY IN MAKING ANY SUCH DECISION SUCH THAT HE/SHE EFFECTIVELY PREVENTS ANY TREATMENT RECOMMENDED BY A THIRD-PARTY PROVIDER. THE PARTIES ACKNOWLEDGE AND AGREE THAT THEY SHALL EACH RESPECT AND SUPPORT THE OTHER'S CULTURE/RELIGION AND CUSTOMS AND SHALL NOT DISPARAGE THE SAME TO A███.

2. PHYSICAL CUSTODY: MOTHER SHALL CONTINUE TO HAVE PRIMARY PHYSICAL CUSTODY OF A███ SUBJECT TO FATHER'S PERIODS OF PARTIAL PHYSICAL CUSTODY. FATHER SHALL HAVE THE CHILD EVERY SECOND WEEKEND OF THE MONTH, (EXCEPT DURING THE MONTHS OF AUGUST AND SEPTEMBER) FROM FRIDAY AT 3:00 P.M. AND/OR WHEN SCHOOL LETS OUT IN THE EVENT THE END OF THE SCHOOL DAY CHANGES AS A███ IS ENROLLED IN KINDERGARTEN, ELEMENTARY SCHOOL AND SO FORTH, UNTIL SUNDAY AT 3:00 P.M. THESE PERIODS OF PARTIAL PHYSICAL CUSTODY SHALL OCCUR IN THE PHILADELPHIA AREA, AND FATHER SHALL ADVISE MOTHER WHERE HE WILL BE STAYING WITH THE CHILD. IN THE MONTH OF AUGUST, FATHER SHALL HAVE PHYSICAL CUSTODY OF A███ FOR THE LAST THREE (3) WEEKS OF THE MONTH AND THIS PERIOD OF PHYSICAL CUSTODY CAN OCCUR OUTSIDE OF THE COMMONWEALTH OF PENNSYLVANIA. GIVEN THAT FATHER WILL BE ENJOYING THE LAST THREE (3) WEEKS OF AUGUST WITH A███, FATHER'S SEPTEMBER WEEKEND VISIT SHALL COMMENCE ON THE FRIDAY OF THE SECOND TO LAST WEEKEND OF THE MONTH AT 3:00 P.M. AND/OR WHEN SCHOOL LETS OUT THROUGH SUNDAY AT 3:00 P.M.

ALL CUSTODIAL EXCHANGES FOR FATHER'S WEEKEND TIME SHALL OCCUR AT THE CHILD'S SCHOOL UNLESS OTHERWISE ARRANGED

AND AGREED BETWEEN THE PARTIES. FATHER TO PROVIDE MOTHER WITH LOCATION/HOTEL INFORMATION IN ADVANCE OF HIS WEEKEND VISITS WITH A██. BOTH PARTIES SHALL ADVISE THE OTHER IF THE CHILD IS GOING OUT-OF-STATE OVERNIGHT DURING HIS/HER CUSTODIAL TIME AND SHALL PROVIDE AN ADDRESS/CONTACT INFORMATION AND WHO THE CHILD SHALL BE WITH PRIOR TO THE OUT-OF-STATE TRAVEL SO THAT THE NON-CUSTODIAL PARENT HAS SAID INFORMATION IN THE EVENT OF AN EMERGENCY. THIS PROVISION PERTAINING TO OUT-OF-STATE TRAVEL ONLY PERTAINS TO FATHER DURING HIS SUMMER VACATION TIME AND/OR WINTER AND SPRING BREAK VACATION TIME, AS FURTHER DETAILED HEREIN BELOW. FATHER SHALL ALWAYS BE PRESENT DURING HIS CUSTODIAL TIME WITH A██, UNLESS HE HAS TO MAKE APPROPRIATE CHILDCARE ARRANGEMENTS DURING HIS THREE-WEEK LONG VISIT IN AUGUST, AND WILL PROVIDE MOTHER WITH ALL RELEVANT INFORMATION PERTAINING TO THE SAME IN ADVANCE. PARTIES TO ENSURE A██ HAS HIS OWN BED IN THEIR RESPECTIVE HOUSEHOLDS AND SHALL ENCOURAGE HIM TO SLEEP IN HIS OWN BED.

3. TRANSPORTATION: STARTING IN 2024 AND ONWARD, THE PARTIES SHALL MEET FOR THE PICK-UP AND DROP OFF FOR THE MONTH OF AUGUST, AT THE TRAIN STATION IN NEWARK, NEW JERSEY, I.E. PENN STATION LOCATED AT RAYMOND PLAZA BETWEEN RAYMOND BLVD AND MARKET STREET. THE PARTIES SHALL ENSURE THAT A██ IS ALWAYS WEARING A SEATBELT AND IS PLACED IN AN AGE AND WEIGHT APPROPRIATE CHILD SAFETY SEAT WHEN TRANSPORTED DURING HIS/HER RESPECTIVE CUSTODIAL TIME.

PARTIES TO ARRANGE AND AGREE AS TO THE TIMING OF CUSTODIAL EXCHANGES FOR HOLIDAYS AND VACATIONS AT LEAST 30 DAYS IN ADVANCE AND SHALL ARRIVE ON TIME SO AS NOT TO DISRUPT THEIR RESPECTIVE TRAVEL ARRANGEMENTS, UNLESS AND EXCEPT IN CASES OF EMERGENCY.

4. COMMUNICATION. BUT FOR IN CASE OF AN EMERGENCY, THE PARTIES SHALL ONLY COMMUNICATE WITH ONE ANOTHER VIA OURFAMILYWIZARD REGARDING THE PHYSICAL AND LEGAL CUSTODY OF A██ THE PARTIES SHALL BE REQUIRED TO RESPOND

TO THE OTHER WITHIN 48 HOURS OF RECEIPT OF A MESSAGE. PARTIES TO COMMUNICATE VIA PHONE/TEXT/EMAIL IN TRUE EMERGENT SITUATIONS.

FATHER SHALL HAVE WEEKLY VIDEO-CALLS WITH A███ ON MONDAY, WEDNESDAY, FRIDAY, AND SATURDAY AT 6:00 P.M. WHEN A███ IS WITH FATHER FOR THE THREE (3) WEEKS IN AUGUST AND DURING WINTER AND/OR SPRING BREAK, MOTHER SHALL ALSO BE AFFORDED VIDEO CALLS WITH A███ ON MONDAY, WEDNESDAY, FRIDAY, AND SATURDAY AT 6:00 P.M. MOTHER SHALL ALSO BE ENTITLED TO VIDEO CALLS WITH A███ DURING FATHER'S WEEKEND VISITS ON SATURDAY NIGHT AT 8:00 P.M. THE PARTIES AGREE THAT THE IPAD FATHER PURCHASED FOR A███ SHALL TRAVEL WITH A███ FOR CUSTODIAL EXCHANGES, IN ORDER TO FACILITATE VIDEO CALLS WITH THE NON-CUSTODIAL PARENT. ALL SUCH VIDEO CALLS SHALL BE REASONABLE IN LENGTH BASED ON THE CHILD'S AGE, UNINTERRUPTED, AND NEITHER PARTY SHALL INTERFERE WITH ANY SUCH COMMUNICATION IN ANY WAY. NEITHER PARTY SHALL INTERROGATE THE CHILD AS TO HOW HE IS SPENDING TIME WITH THE OTHER PARENT, OTHER THAN TO ASK WHAT HE DID AND WHETHER HE IS ENJOYING HIMSELF. NEITHER PARTY SHALL INCITE AND/OR UPSET THE CHILD SO AS TO DISRUPT THE OTHER'S CUSTODIAL TIME. UNLESS IT IS AGREED THAT ANOTHER MEANS OF VIDEO-CALLING IS TO BE USED, THE PARTIES SHALL USE SKYPE TO FACILITATE VIDEO CALLS. THE PARTIES TO FACILITATE CALLS WITH THE NON-CUSTODIAL PARENT AT A███ REQUEST, PROVIDED THEY ARE NOT OTHERWISE OCCUPIED. NEITHER PARTY SHALL PRESSURE OR OTHERWISE INGRATIATE HIMSELF/HERSELF ON A███ TO MAKE ANY SUCH REQUESTS.

5. TRACKING DEVICES: NEITHER PARTY SHALL PLACE A TRACKING DEVICE ON A███ AND/OR ANY OF HIS BELONGINGS. GIVEN THAT THE CHILD WILL BE TRAVELING WITH HIS IPAD, THE CHILD SHALL NOT HAVE ANY CELL PHONE, OR DEVICE TO CALL THE OTHER PARTY, INCLUDING THE WATCH PREVIOUSLY SUPPLIED BY MOTHER, UNLESS THE PARTIES OTHERWISE AGREE IN WRITING TO THE SAME.

6. HOLIDAYS. PARTIES TO ALTERNATE A███ WINTER AND SPRING BREAK VACATIONS FROM SCHOOL ON AN EVEN/ODD YEAR BASIS,

SUCH THAT FATHER SHALL ENJOY WINTER BREAK WITH A███ COMMENCING IN 2023 AND EVERY ODD YEAR THEREAFTER. MOTHER SHALL ENJOY WINTER BREAK WITH A██ IN EVEN YEARS. FATHER SHALL ENJOY SPRING BREAK WITH A██ IN 2024 AND EVERY EVEN YEAR THEREAFTER. MOTHER SHALL ENJOY SPRING BREAK IN ODD YEARS. WINTER AND SPRING BREAK SHALL COMMENCE THE DAY AFTER SCHOOL LETS OUT UNTIL TWO DAYS BEFORE SCHOOL BEGINS.

THE PARTIES HEREBY ACKNOWLEDGE AND AGREE TO BE FLEXIBLE WITH ONE ANOTHER WITH REGARD TO ANY CHANGES IN THE CUSTODY SCHEDULE AND MAY AMEND THE SCHEDULE AS MUTUALLY AGREED. THE PARTIES SHALL FURTHER COOPERATE WITH ONE ANOTHER SO THAT A███ MAY ATTEND SOCIAL AND/OR HOLIDAY AND FAMILY EVENTS/GATHERINGS WHENEVER PRACTICAL, ESPECIALLY SINCE THE PARTIES CELEBRATE SEPARATE HOLIDAYS MANY OF WHICH FALL ON A LUNAR CALENDAR. THE PARTIES SHALL MAKE ANY SUCH A REQUEST TO THE OTHER PARENT AS SOON AS POSSIBLE UPON LEARNING OF SUCH AN EVENT AND THE OTHER PARENT SHALL NOT UNREASONABLY WITHHOLD HIS/HER CONSENT TO SUCH REQUESTS. THAT PARTY SHALL PROVIDE THE OTHER WITH MAKE-UP TIME FOR ANY MISSED PHYSICAL CUSTODY IF THE SAME IS FEASIBLE AND PRACTICAL FOR BOTH A████ AND THE PARTIES' RESPECTIVE SCHEDULES.

7. CO-PARENTING COUNSELING: THE PARTIES SHALL PARTICIPATE IN AT LEAST FIVE (5) SESSIONS WITH A MUTUALLY AGREED UPON CO-PARENTING COUNSELOR. PARTIES TO WORK TOGETHER TO FIND AN IN-NETWORK PROVIDER AND EACH PARTY SHALL BE 50% RESPONSIBLE FOR THE COST OF THE CO-PAY FOR THESE SESSIONS.

8. THIS STIPULATION RESOLVED ALL OUTSTANDING CUSTODY PETITIONS CURRENTLY BEFORE THE COURT, INCLUDING FATHER'S COMPLAINT FOR CUSTODY, MOTHER'S ANSWER AND COUNTERCLAIM AND FATHER'S PETITION FOR CONTEMPT. AS SUCH, THE HEARING CURRENTLY SCHEDULED BEFORE THE HONORABLE LEANNE LITWIN ON MAY 23, 2023 SHALL BE REMOVED

FROM THE COURT CALENDAR, AND THE FOREGOING PETITIONS ARE EFFECTIVELY WITHDRAWN.

9. RELOCATION NOTICE: NO PARTY MAY MAKE A CHANGE IN THE RESIDENCE OF THE CHILD THAT SIGNIFICANTLY IMPAIRS THE ABILITY OF THE OTHER PARTY TO EXERCISE CUSTODIAL RIGHTS WITHOUT FIRST COMPLYING WITH ALL THE APPLICABLE PROVISIONS OF 23 PA.CS. SECTION 5337 AND PA.R.C.P. 1915.17 REGARDING RELOCATION.

EVEN IF A MOVE DOES NOT ENTAIL A RELOCATION, BOTH PARTIES SHALL STILL HAVE AN AFFIRMATIVE OBLIGATION TO INFORM THE OTHER OF ANY CHANGE IN HIS/HER ADDRESS AT LEAST ONE WEEK PRIOR TO HIS/HER MOVE.

Appellant's first allegation of error is "the trial court erred as a matter of law and abused its discretion where it determined that by clear and convincing evidence, Reem Hassan, was in civil contempt by violating an order that was definite, clear and specific."[3] The above order is sufficiently definite, clear and specific to enable this court to make a finding of contempt.

Appellant's second allegation of error is "the trial court erred as a matter of law and abused its discretion where it determined that by clear and convincing evidence, Reem Hassan, was in civil contempt by violating an order and that there was notice of that order." The above order was entered as a stipulation between parties, drafted by their respective attorneys and signed by the parties. It stretches credulity and approaches a disrespect

---

[3] It is unclear to this court why Appellant uses the standard "clear and convincing evidence" in her first four allegations of error. The burden of proof in a finding of civil contempt is "preponderance of the evidence". See <u>Hacar</u>.

upon the Superior Court to argue that Appellant did not have notice of a document which bears her signature.

Appellant's third and fourth allegations claim that that it was an abuse of discretion and/or an error of law to find that Appellant's conduct was volitional and that she acted with wrongful intent. After considering all testimony and evidence presented and considering the parties' and witnesses' demeanor and credibility this court found substantial and credible evidence that Mother has made a concerted effort to exclude Father from the child's life.[4]

The order of May 23, 2023, provided the parties with shared legal custody. Assuming *arguendo* that either party not know what shared legal custody entails, the stipulated order states that the parties, "SHALL MAKE ALL MAJOR DECISIONS REGARDING THE CHILD'S HEALTH, EDUCATION, SOCIAL AND RELIGIOUS UPBRINGING TOGETHER." Despite this provision Father alleged and testified credibly that Mother enrolled the child in kindergarten without his consultation, knowledge, or consent, and that when he did contact the school, he learned that Mother had listed her current husband as the child's father. N.T. 12/2/24 at 80. Father had also been excluded as a contact with the child's dentist and

---

[4] See N.T. 1/9/25 at 209 – 210 (analysis of custody factor # 8).

doctor's offices, with Mother's husband being listed as the child's father with those offices. Id. At 80 – 81. Mother had also recently enrolled the child in tutoring without Father's knowledge or consultation.

> MS. HASSAN: When he asked me about the tutor, I told -- that he was willing to get a tutor. If it was okay to -- for somebody to come to my home. I told him he's already being tutored. Id. At 185 – 186.

Given the specific examples above, along with the totality of the circumstances, especially the behavior and demeanor of the parties that this court witnessed over multiple days of trial, there is more than adequate support in the record that Mother's conduct was volitional and that she acted with wrongful intent. Appellant's third and fourth allegations of error are without merit.

### 5. The trial court erred as a matter of law when it failed to re-interview the child after new allegations of abuse

The weight to be accorded a child's preference varies with the age, maturity and intelligence of that child, together with the reasons given for the preference. Moreover, as children grow older, more weight must be given to the preference of the child. B.C.S. v. J.A.S., 994 A.2d 600, 604 (Pa. Super. Ct. 2010). While the express wishes of a child in a custody action are not controlling, they constitute an important factor that must be considered carefully by the trial court when determining the child's best interest. Graham v. Graham, 794 A.2d 912, 918 (Pa. Super. Ct. 2002).

This court interviewed the child at length on December 3, 2024. It was abundantly clear that the child had been coached by Mother in his testimony.

> "One of the things that I will note is that my note -- my note, the last time I spoke with [the child] is -- the child was prepared for his testimony the last listing. Clearly. Clearly. Just because of what he said to me. When I asked him why he was there, he was speaking to the judge so that, 'I can move to a new house.' And that. And that because Dad was trying to keep him away from his mom. I mean, you know, that right there. That right there speaks volumes. Is there? And I don't know if there is any reason that I would think that he wouldn't be prepared also this time." N.T. 1/9/25 at 195.

After speaking with the child this court determined that the child's testimony should not be given much if any weight beyond its evidence of Appellant attempting to influence the custody litigation by way of the child. The weight to be attributed to the child's testimony can best be determined by the judge before whom the child appears. Myers v. DiDomenico, 657 A.2d 956, 958 (Pa. Super. Ct. 1995). Since this court had already interviewed the child and determined his testimony to have been influenced by Mother, it was not an error of law or abuse of discretion to not reinterview the child approximately one month later.

### 6. The trial court erred as a matter of law when it failed to appoint a GAL or child-directed counsel before making its decision

A *guardian ad litem* or GAL, when appointed, is tasked with representing the best interest of a child, irrespective of whether or not those

interests align with the child's wishes and desires. Counsel for child, when appointed, is responsible for representing the legal interests of a child. The statutes governing the appointment of a GAL and counsel for child are 23 Pa.C.S. §5334 and §5335 respectively. [5]

Section 5334(a) states "the court **may** on its own motion or the motion of a party appoint a guardian ad litem to represent the child in the action." Section 5335(a) states, "the court **may** appoint counsel to represent the child if the court determines that the appointment will assist in resolving the issues in the custody proceeding."[6] Neither provision regarding the appointment of either counsel for child or GAL is mandatory in any custody proceeding. While the court may make the appointment *sua sponte*, a party may also motion the court if they believe the appointment of a GAL is necessary. In this matter, neither Appellant nor Appellee requested that counsel for the child or a GAL be appointed. Since this court was not required to appoint either a GAL or counsel for the child and since neither party requested such appointment, this allegation of error is without merit.

---

[5] 23 Pa.C.S.A. § 5334 is suspended insofar as it (1) requires that a guardian ad litem be an attorney, (2) permits the guardian ad litem to represent both the best interests and legal interests of the child, (3) provides the guardian ad litem the right to examine, cross-examine, present witnesses and present evidence on behalf of the child, and (4) prohibits the guardian ad litem from testifying, pursuant to Pa.R.C.P. No. 1915.25.
[6] Emphasis added

## 7. The trial court erred as a matter of law upon entering a custody order while DHS was still investigating allegations of abuse, pursuant to the CPCSL

Chapter 53 of the Domestic Relations Statute governs custody disputes while the protection of children from abuse is governed by Chapter 63, often referred to as Child Protective Services Law, or CPSL. The purpose of the Child Protective Services Law is, inter alia, to establish in each county protective services for the purpose of investigating reports [of suspected child abuse] swiftly and competently, provid[e] protection for children from further abuse and provid[e] rehabilitative services for children and parents involved so as to ensure the child's well-being and to preserve, stabilize and protect the integrity of family life wherever appropriate. Miller on Behalf of Walker v. Walker, 445 Pa.Super. 537, 548, 665 A.2d 1252, 1257 (1995) (summarizing 23 Pa.C.S. 6302(a)). The CPSL provides procedures for the reporting and investigation of child abuse and establishes a system for the prevention of further abuse, which includes proceedings to have the child removed from the home and taken into protective custody. Egelman ex rel. Egelman v. Egelman, 728 A.2d 360, 365–66 (Pa. Super. Ct. 1999). Under the CPSL, it is the county Children and Youth Services that performs the investigations and arranges for the removal of a child from the home. Id. At 366.

The mere fact that an investigation into alleged abuse has been opened by the county agency tasked with such investigations is not a pause and a bar to custody proceedings under Chapter 53 of the Domestic Relations Statute. If during the course of its investigation the agency believes that the child is in danger of abuse the procedure is to file for an order of protective custody and the child may be taken into protective custody pursuant to 42 Pa.C.S.A. § 6324. This court did not find the allegations of abuse that allegedly took place prior to the protracted hearing on January 9, 2025, but only came to light after the denial of Mother's relocation, credible. If the Philadelphia Department of Human Services reaches a different conclusion as a result of their investigation they may file for an order of protective custody. This allegation of error is without merit.

### 8. The trial court erred as a matter of law when it denied the appellant's motion to relocate when appellant provided evidence of a job in another state

Appellant has waived this issue by failing to file her appeal within 30 days of this courts decision and entry of order denying relocation. At the conclusion of the hearing on January 9, 2025, this court ruled as follows:

> It is a final order that relocation is denied. Just to make it clear. That is a final order as of today. So if anybody has a problem with it, you have it. You have 30 days from today to file an appeal to Superior Court of Pennsylvania, 10 days to ask the Court to reconsider her decision. Are there any questions? N.T. 1/9/25 at 236.

The following order was entered, signed and docketed by this court:

AND NOW, THIS 9TH DAY OF JANUARY, 2025, IT IS HEREBY ORDERED AS FOLLOWS:

FATHER, WILLIAM C. JUAN, WITH COUNSEL, JAIMIE COLLINS, ESQUIRE, AND MOTHER, REEM E. HASSAN, WITH COUNSEL, MICHAEL GRASSO, ESQUIRE, PRESENT FOR TODAY'S HEARING.

TESTIMONY CONCLUDED. CHILD WAS INTERVIEWED ON DECEMBER 2, 2024.

AN ANALYSIS OF THE CUSTODY FACTORS SET FORTH IN 23 PA. C.S. SECTION 5328(A) AND RELOCATION FACTORS SET FORTH IN 23 PA.C.S SECTION 5337 WAS PLACED ON THE RECORD TODAY.

FATHER'S COUNTER-AFFIDAVIT OBJECTING TO MOTHER'S NOTICE OF PROPOSED LOCATION IS GRANTED AFTER A HEARING. MOTHER'S NOTICE OF PROPSED RELOCATION NORTH CAROLINA WITH THE CHILD, A███ C. J███, BORN ████████ IS DENIED.

FATHER SHALL HAVE THE CHILD FOR CHINESE NEW YEAR FROM TUESDAY, JANUARY 28TH FROM PICK UP AT SCHOOL UNTIL THURSDAY JANUARY 30TH, DROP OFF AT SCHOOL.

THE PETITION FOR CONTEMPT FILED ON OCOTBER 10, 2023 AND THE PETITION TO MODIFY CUSTODY FILED ON MAY 10, 2024 BY FATHER ARE HELD UNDER ADVISEMENT.

NOTICE OF INTENT TO RELOCATE: NO PARTY MAY MAKE A CHANGE IN THE RESIDENCE OF ANY CHILD WHICH SIGNIFICANTLY IMPAIRS THE ABILITY OF THE OTHER PARTY TO EXERCISE CUSTODIAL RIGHTS WITHOUT FIRST COMPLYING WITH ALL APPLICABLE PROVISIONS OF 23 PA. C.S. 5337 AND PA. R.C.P. NO. 1915.17 REGARDING RELOCATION.

Notice of appeal shall be filed within 30 days after the entry of the order from which the appeal is taken. Pa.R.A.P. 903(a). In order to preserve the right to appeal from an order which finally adjudicates a dispute between litigants, it is beyond question that the appeal must be filed within 30 days of

the date of the order [,] [t]he 30-day period must be construed strictly. In re Greist, 431 Pa.Super. 188, 191, 636 A.2d 193, 195 (1994). The order denying relocation was entered January 9, 2025. Appellant did not file her appeal until February 18, 2025, and has thus waived this issue for appellate review.[7]

## CONCLUSION

For the reasons stated above, the current Appeal should be denied, and the Orders of January 9, 2025, and January 17, 2025, should be affirmed.

Respectfully submitted,

Date: March 20, 2025

Leanne Litwin, J.

COPIES SENT
PURSUANT TO Pa.R.C.P. 236(b)

MAR 2 0 2025

FIRST JUDICIAL DISTRICT OF PA
USER I.D.: 5732

---

[7] Had this issue not been waived, this court's decision is supported by substantial and credible evidence as detailed in the analysis of the relocation factors placed on the record at the conclusion of the proceedings. See N.T. 1/9/25 216-225.

**EDELINA M. SCHUMAN, ESQUIRE**
**Attorney Identification Number: 84059**
**2811 Ogden St., Ste. 100**
**Philadelphia, PA 19130**
**267-625-7491**
**eschuman@schumanlaw.com**
**Attorney for Appellant**

## COURT OF COMMON PLEAS
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
## FAMILY DIVISION – DOMESTIC RELATIONS

| | | |
|---|---|---|
| **WILLIAM JUAN** | : | |
| **Vs.** | : | |
| | : | **0C2205533** |
| **REEM HASSAN** | : | |

### CONCISE STATEMENT OF ERRORS COMPLAINED OF ON APPEAL

Appellant, pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure, files this Statement of Errors Complained of on Appeal and in support thereof avers the following:

1. The trial court erred as a matter of law and abused its discretion where it determined that by clear and convincing evidence, Reem Hassan, was in civil contempt by violating a court order that was definite, clear and specific.

2. The trial court erred as a matter of law and abused its discretion where it determined that by clear and convincing evidence, Reem Hassan was in civil contempt by violating a court order and that there was notice of that order.

3. The trial court erred as a matter of law and abused its discretion where it determined that by clear and convincing evidence, Reem Hassan was in civil contempt by violating a court order and that the act constituting the alleged violation was volitional.

Exhibit "C"

4. The trial court erred as a matter of law and abused its discretion where it determined that by clear and convincing evidence, Reem Hassan was in civil contempt by violating a court order and that she acted with wrongful intent.

5. The trial court erred as a matter of law when it failed to re-interview the child after new allegations of abuse.

6. The trial court erred as a matter of law when it failed to appoint a GAL or child-directed counsel before making its decision.

7. The trial court erred as a matter of law upon entering a custody order while DHS was still investigating allegations of abuse, pursuant to the CPCSL.

8. The trial court erred as a matter of law when it denied the appellant's motion to relocate when appellant provided evidence of job in another state.

9. Appellant respectfully requests to reserve the right to supplement this Statement of Errors Complained of on Appeal, pending receipt of the Notes of Testimony in this matter.

Respectfully submitted,

_____

Edelina M. Schuman, Esquire for Reem Hassan

BY:   **EDELINA M. SCHUMAN, ESQUIRE**
**Attorney Identification Number:  84059**
**2811 Ogden St., Ste. 100**
**Philadelphia, PA  19130**
**267-625-7491**
**eschuman@schumanlaw.com**
**Attorney for Appellant**

## COURT OF COMMON PLEAS
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
## FAMILY DIVISION – DOMESTIC RELATIONS

| | | |
|---|---|---|
| WILLIAM JUAN | : | |
| Vs. | : | |
| | : | 0C2205533 |
| REEM HASSAN | : | |

## REQUEST FOR TRANSCRIPT

A Notice of Appeal has been filed in this matter.  The official court reporter is hereby ordered to produce, certify, and file the transcripts of the hearings held in this matter on April 9, 2024, September 5, 2024, December 2, 2024, January 9, 2025, and January 15, 2025, in conformity with Rule 1922 of the Pennsylvania Rules of Appellate Procedure.

Edelina M. Schuman, Esquire
Counsel for Reem Hassan

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Notice of Appeal and Concise Statement of Errors Complained of on Appeal has been served upon the persons and in the manner indicated below, which service satisfies the requirements of PA.R.A.P. 121:

Honorable Leanne Litwin
Court of Common Pleas
Family Court Division
1501 Arch Street
Philadelphia, PA 19103
Via hand delivery on 2/18/25

Jamie B. Collins, Esquire
1601 Market Street, Suite 2230
Philadelphia, PA 19103
Via email on 2/18/25

Janet Fasy Dowds
Deputy Court Administrator
First Judicial District Court of Pennsylvania
Land Title Building
100 South Broad Street, 2nd Floor
Philadelphia, PA 19110
Via USPS

Digital Recorder
First Judicial District Court of Pennsylvania
Land Title Building
100 South Broad Street, 2nd Floor
Philadelphia, PA 19110
Via USPS

Dated: _____2/17/25_____

_____
Edelina M. Schuman, Esquire
Counsel for Reem Hassan